Filed 12/18/15  P. v. Martinez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MAURO MARCELO MARTINEZ,<br><br>    Defendant and Appellant. | D066479<br><br><br><br>(Super. Ct. No. SCN303877) |

APPEAL from a judgment of the Superior Court of San Diego County,

Sim Von Kalinowski, Judge.  Affirmed as modified.

Raymond M. DiGuiseppe, under appointment by the Court of Appeal, for

Defendant and Appellant.

Kamala D. Harris, Attorney, Julie L. Garland, Assistant Attorney General, Barry

Carlton and Heidi Salerno, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

Mauro Marcelo Martinez pleaded guilty to three counts of committing a lewd act upon a child (Pen. Code,[1] § 288, subd. (a); counts 6-8).  A jury further convicted Martinez of one count of having sexual intercourse with a child under age 10 (§ 288.7, subd. (a); count 1) and three additional counts of committing a lewd act upon a child (§ 288, subd. (a); counts 3-5).[2]  Martinez committed the offenses in count 1 and counts 3 through 5 against victim 1.  He committed the offenses in counts 6 through 8 against victim 2.  Accordingly, the jury found true allegations Martinez committed his crimes against more than one victim (§ 667.61, subds. (b), (c), & (e)(4)).

The trial court sentenced Martinez to an indeterminate prison term of 25 years to life for count 1, consecutive prison terms of 15 years to life for counts 3, 4, 5, and 8, and concurrent determinate prison terms of six years for count 6 and eight years for count 7.  As part of the sentence, the court imposed various fines, fees, and assessments, including a court operations assessment of $300 (§ 1465.8, subd. (a)(1)) and a court facilities assessment of $240 (Gov. Code, § 70373, subd. (a)(1)).  The court also awarded 870 days of presentence custody credit.  The presentence custody credit was for the actual time

---

[1]     Further statutory references are also to the Penal Code unless otherwise stated.

[2]     The court granted Martinez's section 1118.1 motion to dismiss count 2, which was an additional charge of sexual intercourse with child under 10 (§ 288.7, subd. (a)), because there was insufficient evidence the conduct alleged in the charge occurred after section 288.7's effective date.

Martinez spent in custody before sentencing. The court did not award Martinez any presentence conduct credit.

Martinez appeals, contending we must reverse his conviction because the court prejudicially erred by denying his severance motion, admitting evidence of other charged sex offenses, and admitting a videotape of him committing the other charged sex offenses. He also contends the cumulative prejudicial effect of these errors deprived him of a fair trial. He further contends the court operations and court facilities assessments imposed by the court exceeded the amount authorized by statute. Finally, he contends the court erred by failing to award him presentence conduct credit under section 2933.1, subdivision (a). The People concede the latter two points and we modify the judgment to reduce the court operations and court facilities assessments to $280 and $210, respectively, and to include an award of 130 days of presentence conduct credit under section 2933.1, subdivision (a). In all other respects, we affirm the judgment.

## BACKGROUND[3]

*Victim 1*

Martinez had sexual intercourse with victim 1 approximately 2 to 3 times a month when she was between ages four and 10. On a few of those occasions, he also put his fingers in her vagina. After victim 1 began menstruating, around age 11, the frequency of the sexual intercourse diminished, occurring between two to six more times.

---

[3]     To preserve the confidentiality of the victims' identities, our summary omits certain details, which, while superficially relevant to the issues raised on appeal, are not critical to our analysis.

Among the instances of sexual intercourse, when victim 1 was four, Martinez came into her room while she was sleeping, lifted up her nightgown, placed his penis in her vagina, and started having sex with her. When she was four or five, he laid her on a couch, pulled her pants down, and had sexual intercourse with her. When she was six, he laid her on a counter and had sexual intercourse with her. When she was 11 and was lying down sleeping, he touched her vagina and her breasts under her shirt and then had sexual intercourse with her.

Although victim 1 had multiple opportunities to report Martinez's actions to child protective services workers, she never did and never planned to do so because she was afraid of the repercussions. Instead, when asked, she denied Martinez had ever touched her inappropriately. She did not reveal Martinez's actions until she was 13 and receiving anger management counseling.

*Victim 2*

Martinez lewdly touched victim 2 when she was under age 12. The touching included kissing victim 2 and fondling victim 2's breasts and vagina, both over and under her clothing (counts 6-8).[4] Victim 1 and her brother, who were then age six or seven, videotaped the lewd touching. The police learned of the videotape while investigating the crimes against victim 1. Martinez tried, but failed, to destroy the videotape.

---

[4] Victim 2 told police Martinez lewdly touched her on more than one occasion; however, the court limited the evidence of Martinez's crimes against victim 2 to the conduct depicted in the videotape because the evidence was more certain and, therefore, more probative of Martinez's propensity to engage in such conduct.

4

*Martinez's Admissions and Defense*

Martinez initially denied any sexual conduct with the victims. After being confronted with the existence of a videotape of his conduct with victim 2, he admitted he kissed victim 2 and touched her breasts with his hand and mouth. He also admitted to once touching victim 1's vagina with his hand and penis when she was five or six.

After the court denied Martinez's motion to sever the trial of charges involving victim 1 from the trial of the charges involving victim 2 (see Discussion part I, *post*), Martinez pleaded guilty to the charges involving victim 2. As the factual basis for his guilty plea, Martinez admitted he "kissed [victim 2] on [the] lips, touched [victim 2] on her breast with [his] hand [and] mouth with a sexual intent."

At trial, Martinez defended the charges involving victim 1 and the multiple victim enhancement allegations largely on the theory victim 1 fabricated her sexual abuse claims at the behest of a disgruntled former love interest of his. Among the key evidence supporting the defense was evidence the love interest had repeatedly reported Martinez to child protective services, victim 1 repeatedly told child protective services workers Martinez had not touched her inappropriately and, after victim 1 came forward with her claims of sexual abuse, the love interest coached her to tell authorities Martinez had a distinguishing mark on his penis.

DISCUSSION

I

*Severance Motion*

A

Before trial, Martinez moved to sever the trial of the charges related to victim 1 from the trial of the charges related to victim 2.  The court denied the motion, finding the crimes against both victims were of the same class, the evidence for each set of crimes was cross-admissible, and, although the evidence of the crimes against victim 2 was stronger than the evidence of the crimes against victim 1, the crimes against victim 2 were less inflammatory than the crimes against victim 1.

B

"Section 954 authorizes the joinder of 'two or more different offenses connected together in their commission . . . or two or more different offenses of the same class of crimes or offenses, under separate counts . . . .' "  (*People v. Merriman* (2014) 60 Cal.4th 1, 36 (*Merriman*).)  The law favors joinder because it promotes efficiency.  (*Id.* at p. 37.)  Joinder was authorized in this case because the offenses charged against Martinez were of the same class.  (*People v. Nguyen* (2010) 184 Cal.App.4th 1096, 1112-1113 [for joinder purposes, sexual offenses are of the same class].)

Nonetheless, "a trial court has discretion to order that properly joined charges be tried separately."  (*Merriman*, *supra*, 60 Cal.4th at p. 37.)  "In exercising its discretion in this regard, the court weighs 'the potential prejudice of joinder against the state's strong interest in the efficiency of a joint trial.  [Citation.]'  [Citation.]  To succeed on a claim

6

that the trial court abused its discretion in denying severance or ordering consolidation, the defendant must make a ' "clear showing of prejudice" ' and establish that the ruling fell ' " ' " 'outside the bounds of reason.' " ' " ' [Citations.]  An appellate court evaluates such claims in light of the showings made and the facts known by the trial court at the time of the court's ruling."  (*Id*. at p. 37.)

" ' "The relevant factors are whether (1) the evidence would be cross-admissible in separate trials, (2) some charges are unusually likely to inflame the jury against the defendant, (3) a weak case has been joined with a strong case, or with another weak case, so that the total evidence may unfairly alter the outcome on some or all charges, and (4) one of the charges is a capital offense, or joinder of the charges converts the matter into a capital case."  [Citation.]  "[I]f evidence underlying the offenses in question would be 'cross-admissible' in separate trials of other charges, that circumstance normally is sufficient, standing alone, to dispel any prejudice and justify a trial court's refusal to sever the charged offenses." ' "  (*People v. Scott* (2011) 52 Cal.4th 452, 469-470; *Merriman*, *supra*, 60 Cal.4th at p. 38.)

Here, the evidence of Martinez's conduct with each of the victims would have been cross-admissible at separate trials under Evidence Code section 1108, subdivision (a).[5]  Thus, the court was justified in denying Martinez's motion.

---

5      Evidence Code section 1108, subdivision (a), provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."  (See part II.B, *post*.)

Even if evidence had not been cross-admissible, severance was not required because the factors weighing in favor of severance—converting the charges into a capital offense, unduly inflaming the jury, and bolstering a weak case with a strong case—were either absent or inconsequential. (*People v. Scott*, *supra*, 52 Cal.4th at p. 473; *People v. Soper* (2009) 45 Cal.4th 759, 779-780 (*Soper*) [absence of cross-admissibility by itself is not sufficient to establish abuse of discretion in denying severance motion; reviewing court must consider and weigh the other three factors as well].) The joinder of the two sets of charges did not convert the matter into a capital case and the evidence related to one set of charges was not more inflammatory than the evidence related to the other set of charges. Additionally, the evidence supporting Martinez's guilt of each set of charges was of comparable strength. While the videotape evidence strengthened the prosecution's case for the charges related to victim 2, other evidence strengthened the prosecution's case for the charges related to victim 1, including Martinez's admission he touched victim 1's vagina with his penis when she was a small child. "In any event, as between any two charges, it always is possible to point to individual aspects of one case and argue that one is stronger than the other. A mere imbalance in the evidence, however, will not indicate a risk of prejudicial 'spillover effect,' militating against the benefits of joinder and warranting severance of properly joined charges. [Citation.] Furthermore, the benefits of joinder are not outweighed—and severance is not required—merely because properly joined charges might make it more difficult for a defendant to avoid conviction compared with his or her chances were the charges to be separately tried." (*Soper*, *supra*, at p. 781.)

Accordingly, Martinez has not met his burden of establishing the court's decision to deny his severance motion fell outside the bounds of reason.

Notwithstanding this conclusion, we must still determine whether, considering the same factors in hindsight, the joinder of the charges involving victim 1 with the multiple victim enhancement allegations involving both victims, "actually resulted in 'gross unfairness' amounting to a denial of [Martinez's] constitutional right to fair trial or due process of law."[6] (*Merriman*, *supra*, 60 Cal.4th at p. 46; *Soper*, *supra*, 45 Cal.4th at pp. 783-784.)  Martinez has not persuaded us it did.

The relevance and cross-admissibility of the evidence of Martinez's conduct involving victim 2 increased as the trial progressed because Martinez's chief defense against the charges involving victim 1 and the multiple victim enhancement allegations was that victim 1 had fabricated her claims.  The joinder of the charges and allegations did not alter the relative strength of the prosecution's case beyond that inherent in the admission of other sexual offense evidence under Evidence Code section 1108, subdivision (a) (see part II.B.1, *post*).  In addition, the joinder did not cause the conduct involving one victim to become more inflammatory than the conduct involving the other victim.  The joinder also did not cause this case to be converted into a capital case.  "A fortiori, [Martinez] has not shown actual prejudice amounting to a denial of fundamental fairness and due process." (*People v. Scott*, *supra*, 52 Cal.4th at p. 473.)

---

[6]  We need not make this same determination regarding the charges involving victim 2 as Martinez plea of guilty to these charges precluded them from being tried jointly with the charges involving victim 1.

## II

### *Propensity Evidence*

### A

Before trial, the prosecution moved to admit the videotape of Martinez's sexual conduct with victim 2 as propensity evidence under Evidence Code section 1108. Martinez opposed the motion, arguing the evidence was irrelevant and the court should exclude it under Evidence Code section 352. The court granted the motion, finding the evidence was admissible under Evidence Code section 1108 and the factors favoring exclusion under Evidence Code section 352 did not apply.

### B

### 1

"Character evidence, sometimes described as evidence of a propensity or disposition to engage in a type of conduct, is generally inadmissible to prove a person's conduct on a specified occasion. ([Evid. Code, § 1101, subd. (a)].) This ban against admitting character evidence to prove conduct, however, does not prohibit admission of specific acts of misconduct to establish a material fact like intent, common design or plan, or identity ([*id*., subd. (b)]), and does not affect the admissibility of evidence regarding the credibility of a witness (*id*., subd. (c)). [Citation.] The Legislature has also created specific exceptions to the rule against admitting character evidence in cases involving sexual offenses ([Evid. Code, § 1108, subd. (a)]) . . . . (See [Evid. Code,] § 1101 [, subd.] (a).)

"As relevant here, [Evidence Code] section 1108, subdivision (a), provides: 'In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by [Evidence Code section] 1101, if the evidence is not inadmissible pursuant to [Evidence Code section] 352.' Enacted in 1995, [Evidence Code] section 1108 'implicitly abrogates prior decisions of [the California Supreme Court] indicating that "propensity" evidence is per se unduly prejudicial to the defense.' [Citation.] 'As the legislative history indicates, the Legislature's principal justification for adopting [Evidence Code] section 1108 was a practical one: By their very nature, sex crimes are usually committed in seclusion without third party witnesses or substantial corroborating evidence. The ensuing trial often presents conflicting versions of the event and requires the trier of fact to make difficult credibility determinations. [Evidence Code section] 1108 provides the trier of fact in a sex offense case the opportunity to learn of the defendant's possible disposition to commit sex crimes.' " (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1159-1160.)

2

Although Martinez reluctantly acknowledges the evidence of his crimes against victim 2 was generally admissible under Evidence Code section 1108, he nonetheless contends the court erred by not excluding the evidence under Evidence Code section 352. Evidence Code section 352 "gives the trial court discretion to exclude evidence if its probative value is substantially outweighed by the probability that its admission will necessitate undue time consumption or create substantial danger of undue prejudice,

confusing the issues, or misleading the jury. In exercising this discretion as to a sexual offense, 'trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense.' " (*People v. Loy* (2011) 52 Cal.4th 46, 61 (*Loy*).) We review the court's ruling for abuse of discretion. (*Ibid.*)

Martinez's conviction for the crimes against victim 2 strongly supported admission of the evidence of the crimes because his commission of them was established and he "bore no new burden of defending against [them]." (*Loy*, *supra*, 52 Cal.4th at p. 61.) Additionally, the jury would not be tempted to punish him for the crimes against victim 2 by finding him guilty of the charges against victim 1, and "there was little danger of confusing the issues or requiring an inefficient minitrial to determine [his] guilt" of the crime. (*Ibid.*).

Admission of the evidence also did not distract the jury from its main inquiry. "The Legislature has determined that [prior sexual offense] evidence is ' "particularly probative" ' in sex cases." (*Loy*, *supra*, 52 Cal.4th at p. 61.) The main inquiry in this case was whether victim 1 fabricated her allegations against Martinez. The evidence of Martinez's prior crimes against victim 2 assisted in the jury's inquiry into victim 1's

12

credibility, particularly since the crimes against victim 2 occurred within the time frame the crimes against victim 1 were alleged to have occurred. (See *id.* at p. 62.)

Although criminal history evidence "inevitably has some prejudicial effect," this circumstance is not sufficient to exclude it. (*Loy*, *supra*, 52 Cal.4th at p. 62.) " '[Evidence Code] section 1108 affects the practical operation of [Evidence Code] section 352 balancing " 'because admission and consideration of evidence of other sexual offenses to show character or disposition would be no longer treated as intrinsically prejudicial or impermissible. Hence, evidence offered under [Evidence Code section] 1108 could not be excluded on the basis of [Evidence Code section] 352 unless "the probability that its admission will . . . create substantial danger of undue prejudice" . . . substantially outweighed its probative value concerning the defendant's disposition to commit the sexual offense or offenses with which he is charged and other matters relevant to the determination of the charge. As with other forms of relevant evidence that are not subject to any exclusionary principle, *the presumption will be in favor of admission*.' " ' " (*Loy*, at p. 62.)

Nothing about the evidence of Martinez's crimes against victim 2 required the court to find this presumption was overcome. The facts of the crimes against victim 2 were no more and arguably less inflammatory than the facts of the crimes against victim 1, the presentation of the evidence of the crimes against victim 2 was limited in scope and consumed relatively little trial time, and the crimes against victim 2 were not too remote to be probative. (*Loy*, *supra*, 52 Cal.4th at p. 62.) Accordingly, we conclude Martinez

13

has not established the court abused its discretion by declining to exclude the evidence of the crimes against victim 2 under Evidence Code section 352.

III

*Videotape Evidence*

A

After the court granted the prosecution's motion to admit evidence of Martinez's crimes against victim 2 as propensity evidence and Martinez pleaded guilty to those crimes, Martinez argued the court was required to conduct a new, item-by-item analysis of the propensity evidence under Evidence Code section 352. More particularly, Martinez argued the court should exclude the videotape of Martinez engaging in sexual conduct with victim 2 because the videotape was excessively inflammatory, especially since Martinez admitted committing the crimes against victim 2.

The court agreed it was required to conduct a new analysis under Evidence Code section 352. After doing so, the court declined to exclude the videotape, finding its probative value outweighed its prejudicial effect in part because the videotape was brief (a little over a minute long), it did not convey any irrelevant or inflammatory details, and relying on witness testimony in lieu of the videotape would be problematic because victim 2 was a reluctant witness, and victim 1 and her brother were too young when the crimes occurred to be good witnesses.

B

We review the court's decision to admit the videotape under the same standards discussed in part II.B.2, *ante*. For the reasons discussed in that part as well as the reasons

14

given by the court when it rendered it decision, we conclude Martinez has not established the court abused its discretion in admitting the videotape into evidence.

IV

*Cumulative Error*

Martinez contends we must reverse his conviction because the accumulation of the above claims of error deprived him of a fair trial. Because we have rejected the above claims of error, we must necessarily reject Martinez's cumulative error claim as well. (*People v. Vieira* (2005) 35 Cal.4th 264, 294; *People v. Bolin* (1998) 18 Cal.4th 297, 335.)

V

*Court Operations and Court Facilities Assessments*

Martinez contends the court erred by imposing court operations and court facilities assessments in excess of the statutorily authorized amounts. The People concede and we agree the court so erred.

With certain exceptions inapplicable here, section 1465.8, subdivision (a)(1), requires the court to impose a court operations assessment of $40 on every criminal conviction and Government Code section 70373, subdivision (a)(1), requires the court to impose a court facilities assessment of $30 on every felony conviction. Courts have interpreted these assessments as applying to each count of which a defendant is convicted. (*People v. Sencion* (2012) 211 Cal.App.4th 480, 483-484.) Because the jury convicted Martinez of seven counts, the court was required to impose a court operations assessment of $280 and a court facilities assessment of $210. (See, e.g., *People v. Walz*

15

(2008) 160 Cal.App.4th 1364, 1372.)  As the court imposed assessments exceeding these amounts, we modify the judgment to reduce the assessments to the statutorily authorized amounts.

VI

*Presentence Conduct Credits*

During the sentencing hearing, the court did not award Martinez any presentence conduct credit, finding he was not entitled to receive such credit.  Martinez contends, the People concede, and we agree Martinez was entitled to an award of presentence conduct credit equivalent to 15 percent of his actual days in custody, or 130 days.

At the time of sentencing, the court must determine a defendant's entitlement to presentence conduct credit.  Generally, a defendant receives conduct credit against his term of imprisonment for good behavior and willingness to work during time served before sentencing.  (*People v. Brewer* (2011) 192 Cal.App.4th 457, 461.)  A defendant convicted of a felony offense listed in section 667.5, subdivision (c), may not receive conduct credit in excess of 15 percent of time served.  (§ 2933.1, subd. (a).)  This limit applies here because Martinez was convicted of violating section 288, subdivision (a), which is one of the felony offenses listed in section 667.5, subdivision (c).  (§ 667.5, subd. (c)(6); *People v. Goldman* (2014) 225 Cal.App.4th 950, 962; *People v. Brewer*,

*supra*, at pp. 462-464.)  We, therefore, modify the judgment to include an award of 130 days of conduct credit under section 2933.1, subdivision (a).[7]

DISPOSITION

The judgment is modified to reduce the court operations and court facilities assessments to $280 and $210, respectively, and to include an award of 130 days of presentence conduct credit under section 2933.1, subdivision (a).  The court is directed to amend the abstract of judgment to reflect these modifications and to forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

MCCONNELL, P. J.

WE CONCUR:

BENKE, J.

IRION, J.

---

[7]    As the People point out, the award of conduct credit does not "affect the requirement of any statute that the defendant serve a specified period of time prior to minimum parole eligibility . . . ."  (§ 2933.1, subd. (b).)